# THE SUPREME COURT, STATE OF WYOMING

## 2026 WY 90

APRIL TERM, A.D. 2026

August 11, 2026

BRIAN SWINDLER,

Appellant
(Petitioner),

v.

S-26-0025

LEAH BRIGHT,

Appellee
(Respondent).

*Appeal from the District Court of Park County*
*The Honorable Bill Simpson, Judge*

*Representing Appellant:*
    Brian Swindler, Pro Se.

*Representing Appellee:*
    Leah Bright, Pro Se.

*Before BOOMGAARDEN, C.J., and GRAY, FENN, JAROSH, and HILL, JJ.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**FENN, Justice.**

[¶1]   Brian Swindler (Father) challenges the district court's order on custody, visitation, and child support, which awarded Leah Bright (Mother) primary physical custody of the parties' child.  We affirm.

## ISSUE

[¶2]   Father presents one issue on appeal, which we rephrase as follows: Did the district court abuse its discretion by awarding Mother primary custody of the minor child?

## FACTS

[¶3]   Father and Mother began a relationship in 2015 and subsequently shared a residence together in Cody, Wyoming.  In 2018, the parties had one child born of their relationship, MS.  Although the parties never married, they continued to cohabitate until their relationship ended in 2024.

[¶4]   Following the dissolution of their relationship, Father and Mother established separate residences.  Although the parties never formalized a custody arrangement, they continued to share in the care and custody of MS, with each parent exercising equal access to MS.  In June 2025, however, Mother unilaterally decided to discontinue overnight visits at Father's home due to concerns about the cleanliness of Father's home and MS returning from a visit unkempt.  Shortly thereafter, Mother left Wyoming with MS and traveled to Colorado.  Mother represented to Father that the trip was for the purpose of visiting a friend, when, in fact, she intended to permanently move to Colorado.

[¶5]   After Mother moved, Mother sent Father a text message stating she had relocated to Colorado and was going to be staying with a friend.  In response, Father filed a petition to establish custody, visitation, and child support, requesting sole legal and physical custody with Mother having supervised visits.  Father requested Mother to pay child support.  Father also filed a motion for temporary emergency custody because of Mother's move, requesting that he be awarded temporary custody and Mother's parenting time be limited to supervised visitation every other weekend.  Mother filed a response to Father's emergency motion for temporary custody and asserted a counterclaim.  In her pleadings, Mother alleged that Father abused drugs and alcohol, requested sole legal and physical custody of MS, and asked the district court to limit Father's parenting time to supervised visitation.  Mother also sought an award of child support from Father.

[¶6]   The district court held a hearing on Father's emergency motion on August 1, 2025.  The parties stipulated to Father's paternity and acknowledged Father's name is listed on the child's birth certificate.  At the conclusion of the hearing, the district court found both parents were fit and proper to have legal and physical custody of MS.  It nevertheless

1

awarded Mother temporary physical custody and the parties joint legal custody. For Father's parenting time, the district court ordered Mother to have the child back in Cody beginning August 6, 2025, and ending August 12, 2025. During the hearing, Mother stated she submitted a two-week alcohol panel and a 90-day hair follicle test and requested Father provide the same "before he has access to [MS]" because of her concerns about his drug and alcohol use. The district court asked if Father could provide a drug screen, and if possible, a hair follicle test, and he agreed. Because the parties both raised the issue of drug tests, the district court ordered each party to submit to a drug screening every 30 days.

[¶7] At the conclusion of the first hearing, the district court scheduled a status hearing for August 7, 2025. At that hearing, Mother testified it was her intention to reside in Colorado and continue working remotely, while Father testified it was his desire to remain in Cody, where he lived and worked. The district court entered its interim order and required the child to remain enrolled in school in Colorado but for Father to receive visitation every weekend with the parties exchanging MS in Douglas, Wyoming. The interim order remained in effect until the bench trial on September 25, 2025.

[¶8] The district court conducted the bench trial and issued a second interim order. The district court continued physical custody with Mother until it issued its final custody order. Based on the parties' testimony and Mother's admission, the district court found both parties "are fit and proper persons to have care and custody of the child." The district court ordered Father to have the opportunity for visitation any time the parties agreed and specifically awarded Father parenting time with MS from November 1 to November 8, 2025; November 22 to November 29, 2025; and December 19 to January 1, 2026. In addition, the district court granted Father the right of first refusal if Mother traveled for work, which allowed him to travel to Colorado to care for MS during those periods.

[¶9] On January 2, 2026, the district court entered its Final Order on Custody, Visitation and Child Support. The district court found Mother had no family in Cody or within Wyoming and was renting separate living quarters in the basement of a friend's home in Castle Rock, Colorado. It further found Mother's friend had a child the same age as the parties' child, the children got along well, and the friend was available to help care for the child when Mother was unavailable. With respect to Father's living arrangements, the district court found Father was living in a small apartment but had recently entered into a lease for a larger property that allowed him to save money toward purchasing a home. Regarding the parties' employment, the district court found Mother worked remotely from home and had reduced her work-related travel to spend more time with MS. It found Father worked primarily as an independent contractor performing construction work on a project-by-project basis and operated a fishing guide business. Father testified he brought MS with him to work at the construction sites or during guided fishing trips.

[¶10] The district court also addressed the parties' allegations regarding drug and alcohol use, finding both parties' tests were negative. The court noted Mother denied Father one

2

weekend of visitation after he refused to submit to hair-follicle testing, but it found Mother's decision was based on a misunderstanding of the court's earlier ruling.

[¶11] After considering the arguments of the parties, the district court found both Father and Mother were competent and fit parents and had each acted as caregivers for the child at various times. Although the court recognized both parents were fit and competent, it awarded Mother primary physical custody, finding the child was enrolled in school in Colorado and maintaining that stability in Mother's home served the child's best interests. The court awarded the parties joint legal custody. For Father's parenting time, the district court ordered four consecutive nights of visitation for the months of September, October, February, April and May, as well as in November and January for the years Father is not exercising holiday visitation. The court also awarded the parties alternating holidays and granted Father eight weeks of parenting time in the summer, with Mother receiving alternating weekends during that period. Finally, the court declined to award child support, citing the travel expenses Father would incur in exercising his parenting time. Father timely appealed, challenging the district court's order awarding Mother primary physical custody.

## STANDARD OF REVIEW

[¶12] Father challenges the district court's decision awarding Mother primary custody of MS. "We review the district court's custody decision for an abuse of discretion." *Dutka v. Dutka*, 2023 WY 64, ¶ 24, 531 P.3d 310, 318 (Wyo. 2023) (citing *Hehn v. Johnson*, 2022 WY 71, ¶ 18, 511 P.3d 459, 462 (Wyo. 2022); *Johnson v. Johnson*, 2020 WY 18, ¶ 10, 458 P.3d 27, 32 (Wyo. 2020)).

> Custody, visitation, child support, and alimony are all committed to the sound discretion of the district court. We do not overturn the decision of the trial court unless we are persuaded of an abuse of discretion or the presence of a violation of some legal principle. A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances. Our review entails evaluation of the sufficiency of the evidence to support the district court's decision, and we afford the prevailing party every favorable inference while omitting any consideration of evidence presented by the unsuccessful party. Findings of fact not supported by the evidence, contrary to the evidence, or against the great weight of the evidence cannot be sustained. Similarly, an abuse of discretion is present when a material factor deserving significant weight is ignored.

*Baer v. Baer*, 2022 WY 165, ¶ 18, 522 P.3d 628, 635 (Wyo. 2022) (quoting *Meehan-Greer*

*v. Greer*, 2018 WY 39, ¶ 14, 415 P.3d 274, 278–79 (Wyo. 2018)). We are precluded from reweighing the evidence under our standard of review. *Callaway v. Callaway*, 2026 WY 41, ¶ 32, 587 P.3d 501, 512 (Wyo. 2026) (citing *Amadio v. Amadio*, 2025 WY 21, ¶ 24, 564 P.3d 259, 267 (Wyo. 2025)).

## DISCUSSION

[¶13]  "[O]ne of the most difficult and demanding tasks assigned to a trial judge" is to craft custody and visitation arrangements. *Martin v. Hart*, 2018 WY 123, ¶ 27, 429 P.3d 56, 65 (Wyo. 2018) (quoting *Bruegman v. Bruegman*, 2018 WY 49, ¶ 11, 417 P.3d 157, 161 (Wyo. 2018)).  An initial custody determination is particularly difficult when the parties reside a significant geographic distance apart because, although geographic distance does not diminish either parent's ability to fulfill parental responsibilities, it necessarily affects each parent's ability to maintain a meaningful relationship with the child. *Pahl v. Pahl*, 2004 WY 40, ¶ 24, 87 P.3d 1250, 1257 (Wyo. 2004).  In making an initial custody determination, the child's best interests are paramount, and "the trial court has a large measure of discretion" in determining the custodial arrangement that best serves those interests. *Johnson*, 2020 WY 18, ¶ 12, 458 P.3d at 32 (quoting *Arnott v. Arnott*, 2012 WY 167, ¶ 31, 293 P.3d 440, 455 (Wyo. 2012)).  Wyoming Statute § 20-2-201(a) (2025) sets forth a non-exclusive list of factors the district court must consider when ordering a custody arrangement in the best interests of the child:

> (i) The quality of the relationship each child has with each parent;
>
> (ii) The ability of each parent to provide adequate care for each child throughout each period of responsibility, including arranging for each child's care by others as needed;
>
> (iii) The relative competency and fitness of each parent;
>
> (iv) Each parent's willingness to accept all responsibilities of parenting, including a willingness to accept care for each child at specified times and to relinquish care to the other parent at specified times;
>
> (v) How the parents and each child can best maintain and strengthen a relationship with each other;
>
> (vi) How the parents and each child interact and communicate with each other and how such interaction and communication may be improved;

4

(vii) The ability and willingness of each parent to allow the other to provide care without intrusion, respect the other parent's rights and responsibilities, including the right to privacy;

(viii) Geographic distance between the parents' residences;

(ix) The current physical and mental ability of each parent to care for each child;

(x) Whether either parent has a conviction for which the parent must register as a sex offender under W.S. 7-19-301 through 7-19-310;

(xi) Any other factors the court deems necessary and relevant.

"No single factor is determinative, and depending on the case, different factors will present a greater need for emphasis. The one constant is that the resolution must be in the child['s] best interests." *Dutka*, 2023 WY 64, ¶ 25, 531 P.3d at 318 (internal quotation marks omitted) (quoting *Johnson*, 2020 WY 18, ¶ 12, 458 P.3d at 33).

[¶14] Here, the district court considered each of the statutory best-interest factors and found most weighed equally in favor of both parents. One factor, the parties' willingness to accept parenting responsibilities and relinquish care to the other parent, weighed in Father's favor because Mother moved to Colorado without informing Father and denied him one visit based on her misunderstanding of the court's interim ruling regarding drug and alcohol testing. Although the district court weighed this factor in favor of Father, the district court recognized the geographic distance between the parents was more than 500 miles and created a practical difficulty for custody and visitation with the child. The district court determined that a shared custody arrangement was not feasible because the child could not reasonably divide her time between school districts located in different states.

[¶15] After weighing the statutory best-interest factors from the evidence presented by the parties, the district court concluded it was in the child's best interests to award Mother primary physical custody with the parties sharing joint legal custody. The district court explained MS was stable in her current placement with Mother, who worked remotely from home, while Father's self-employment resulted in a more sporadic and unpredictable work schedule. The district court also noted Mother recognized Father is a good parent who deserves liberal visitation, and she was willing to accommodate Father's parenting time by providing him with housing and transportation should he choose to visit MS in Colorado. In fashioning its custodial arrangement, the district court sought to provide the child with the stability of a single primary residence during the school year, while maximizing

Father's parenting time by awarding him eight weeks of summer visitation and four consecutive days of visitation each month.

[¶16]   Father contends the district court abused its discretion in awarding Mother primary physical custody of MS.  He argues the district court's decision is inconsistent with its finding that both parents are fit and capable caregivers, particularly because the parties had successfully shared custody until Mother's move.

[¶17]   "[A] district court does not abuse its discretion if it could reasonably conclude as it did." *Dutka*, 2023 WY 64, ¶ 24, 531 P.3d at 318.  Both parents possess a fundamental right to familial association with their child, and the child likewise has a corresponding right to maintain relationships with both parents. *Callaway*, 2026 WY 41, ¶ 29, 587 P.3d at 511.  Parents also retain a constitutionally protected right to travel and relocate. *Id.*; *Hanson v. Belveal*, 2012 WY 98, ¶ 21, 280 P.3d 1186, 1194 (Wyo. 2012).  Those constitutional interests, however, do not supplant the district court's obligation to determine custody based on the child's best interests, and this Court has repeatedly recognized that "stability in a child's life is of utmost importance." *Martin*, 2018 WY 123, ¶ 22, 429 P.3d at 63.

[¶18]   The record supports the district court's findings and provides a reasonable basis for its custody determination.  Although the parties had successfully shared custody before Mother moved to Colorado, the evidence established that arrangement was no longer practical.  Under the interim order, the district court awarded Father visitation every weekend, but both parties acknowledged exchanging MS each weekend required approximately twenty hours of travel and was simply not feasible.  They also testified that airfare for MS was approximately $872 per trip, making weekly air travel prohibitively expensive.  Additionally, although Mother did deny visitation to Father for one weekend, the record supports the district court's finding Mother did so based on a misunderstanding of the court's order.  Moreover, Mother testified she provided Father with more parenting time than required under the interim order, wanted to encourage and foster a meaningful relationship between Father and the child, and was willing to allow Father to stay in her camper and use a vehicle when exercising parenting time in Colorado.

[¶19]   The evidence also supported the district court's findings regarding stability. At the time of trial, Mother established a residence near the child's school in Colorado and had maintained stable remote employment with the same employer for five years, allowing her to work from home.  By contrast, Father had only recently entered into a temporary six-month lease and had not yet moved into the residence.  He operated a handyman business and fishing guide service, both of which involved less predictable work hours and required Father to take the child with him to work on occasion.  Considering these circumstances, the district court reasonably concluded it was in the child's best interests to maintain the stability provided by Mother's home while ensuring Father continued to have substantial parenting time with the child.

6

[¶20] Although the district court found both parents to be loving, capable, and fit caregivers, it nevertheless was required to balance the parties' competing fundamental rights and determine the custodial arrangement that served the child's best interests under the circumstances presented. While we do not condone Mother's unilateral move without informing Father, her decision rendered the parties' prior informal shared custody arrangement impracticable. Based on the evidence in the record, the district court reasonably concluded that Mother's home provided greater stability for MS during the school year and that it was in MS's best interests to award Mother primary physical custody, while maximizing Father's parenting time through eight weeks of summer visitation, four consecutive days of visitation each month, and an alternating holiday schedule. Because the record supports the district court's findings and provides a reasonable basis for its custody determination, we conclude the district court did not abuse its discretion in awarding Mother primary physical custody.

## CONCLUSION

[¶21] The district court did not abuse its discretion by granting Mother primary physical custody of the child. Affirmed.